Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 18, 2004        Decided April 16, 2004

No. 03–3032

UNITED STATES OF AMERICA,
APPELLEE

v.

ROMONE L. GABRIEL,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00216–01)

———

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Elizabeth H. Danello*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C.*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Howard, Jr.*, U.S. Attorney, and *John R. Fisher* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: EDWARDS and HENDERSON, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Senior Circuit Judge* WILLIAMS.

*Circuit Judge* HENDERSON concurs in the judgment.

WILLIAMS, *Senior Circuit Judge*: Following a search of his home, Romone Gabriel was charged with four offenses: two counts of illegal possession of a firearm or ammunition by a felon under 42 U.S.C. § 922(g), possession of heroin under 21 U.S.C. § 844(a), and possession of an unregistered firearm under 26 U.S.C. § 5861(d). A jury found him guilty on all counts. On two of the issues raised on appeal, the government agrees with the defendant not only that the challenged rulings were error but also that they require a remand for resentencing. Of the remaining issues, only two require discussion: the empanelling of a juror who lived near Gabriel's home and the classification of burglaries committed by the defendant in 1986 as "crimes of violence" under the Sentencing Guidelines. As to these we find no reversible error.

\* \* \*

The first of the discussion-worthy claims is that the district court erred in not striking Juror #1021 for cause. During *voir dire*, the district court asked if any potential juror lived or worked in the vicinity of Gabriel's home, where the weapons and drugs had been found, or was familiar with the area; Juror #1021 answered affirmatively. As a result, the following colloquy took place between her and the district court:

> The Court: Would your familiarity with the area influence you in any way in hearing this case?
>
> Juror #1021: That's why I put a question mark. I wish I knew for sure. I don't know for sure. I don't think so. I think I could be impartial. This is my neighborhood.

The Court: Why do you think that might influence you?

Juror #1021: Guns. There are guns in my neighborhood. I just—I don't know. I went back to the office and I watched the news today [about the then at-large Washington, D.C., snipers] so I am a little upset about guns today. I don't know. I don't think it would but it could. I don't know. I can't honestly answer.

The Court: You can honestly but you just can't be sure.

Juror #1021: I can't be sure. I can't be sure. I just think it's important to—I am very familiar with the area.

The Court: Would you make every effort to put out of your mind the fact that it is in an area you have some familiarity with and try to be fair and impartial?

Juror #1021: I would. I would. I believe that that is what I'm trying to do.

(Tr. 10/07/02 PM at 34–35.) Neither lawyer questioned the potential juror, and she was ultimately included on the panel. Gabriel now for the first time questions Juror #1021's impartiality, asserting plain error in the court's failure to dismiss her for cause on its own motion. See Fed. R. Civ. Pro. 52(b).

In assessing whether a venireman whose impartiality is in question should have been excused for cause, "The relevant question is ... whether the jurors ... had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Yount*, 467 U.S. 1025, 1035 (1984). Even when objection is timely made, a district court finding that a juror is sufficiently impartial can be overturned only for manifest error. *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991). We find no error, much less plain error.

In claiming that the judge should have stricken Juror #1021 for want of impartiality, the defendant stresses the uncertainty reflected in her answers, which he says "failed to assure" that she could render a fair and impartial verdict. But certainty on such an issue is hard to achieve. *Wainwright v. Witt*, 469 U.S. 412, 424–26 (1985). The candidate most ready to proclaim his impartiality may be the one least likely to be impartial. It "is the rare juror who could

honestly 'guarantee' that his feelings about the particular type of crime alleged would in no way affect his deliberations." *United States v. Nelson*, 277 F.3d 164, 202 (2d Cir. 2002) (quoting *United States v. Murray*, 618 F.2d 892, 899 (2d Cir. 1980)) (internal quotes omitted). Instead, courts have focused on the intent of the juror, finding impartiality sufficiently established if the potential juror expresses a clear intent to *try* to be open-minded. See, e.g., *United States v. Powell*, 226 F.3d 1181, 1189 (10th Cir. 2000); *United States v. Hines*, 943 F.2d 348, 353 (4th Cir. 1991); *United States v. Jones*, 865 F.2d 188, 190 (8th Cir. 1989); see also *Nelson*, 277 F.3d at 202–03 (making assurance of "best efforts" *necessary* to empanelling of venireman who has expressed doubts). Given the inevitable uncertainties, coupled with the trial judge's superior opportunity to assess the venireman's candor, see *Wainwright*, 469 U.S. at 428; *United States v. Haldeman*, 559 F.2d 31, 67 n.51 (D.C. Cir. 1976), we think the clear expression of intent to try, credited by the judge, should be sufficient. The district court's failure to excuse Juror #1021 was not error, and therefore necessarily not plain error.

Gabriel next asserts three sentencing claims. The parties agree that the court made two errors that require a remand for resentencing. In the third claim, Gabriel asserts that in calculating his "base offense level" the district court should not have classified his 1986 convictions for burglary as a "crime of violence" under U.S.S.G. § 2K2.1(a)(1).[1] Application Note 5 to U.S.S.G. § 2K2.1 provides that the term "crime of violence" in that section shall have "the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." Accordingly we turn to § 4B1.2(a):

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

[1] Because Gabriel was sentenced in 2003, all U.S.S.G. cites refer to the November 1, 2002 version of the Guidelines.

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

See U.S.S.G. § 4B1.2(a). (Although Gabriel had *two* 1986 convictions for second degree burglary, they resulted from a single proceeding. Thus, under § 4A1.2(a)(2) "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)," and the two burglaries (assuming they count as "crimes of violence") count as only one such crime. Both parties apparently assume (without any obvious error) that the discussion of "sentences" in §§ 4A1.1 and 4A1.2 applies to that of "convictions" in § 2K2.1.)

Gabriel's 1986 burglary convictions were for second degree burglary under the D.C. Code § 22–801(b). That offense does not require the use (or intended or threatened use) of force against another. Nor is it confined to burglary of a dwelling—the only other basis for classification of these convictions as a crime of violence under § 4B1.2(a).

In *Taylor v. United States*, 495 U.S. 575 (1990), the Court prescribed the methodology that has come to govern whether a prior conviction meets Guidelines criteria. Interpreting 18 U.S.C. § 924(e), which provides that the sentences of persons convicted under 18 U.S.C. § 922(g) should be enhanced for prior convictions of a "violent felony," the Court emphatically rejected claims that a prior conviction could be so classified simply on a basis of evidence as to the actual facts of the prior crime. It reasoned that the statutory language pointed to a categorical approach and that "the practical difficulties and potential unfairness of a factual approach are daunting." *Id.* at 601. So far as burglary was concerned, the Court generally approved enhancement only if the statute of conviction required a finding of the elements of " 'generic' burglary." *Id.* at 598–99, 602. Nonetheless, despite excoriating the "factual approach," it approved the sentencing court's going beyond the statutory elements of the crime "in a narrow range of cases," where, although the statute allowed convic-

tion without all the elements of "generic burglary," "a jury was actually required to find all the elements of generic burglary." *Id*. at 602. Summarizing, it said:

> We therefore hold that an offense constitutes "burglary" for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to "generic" burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant.

*Id*.

In *United States v. Hill*, 131 F.3d 1056, 1061–65 (D.C. Cir. 1997), we found this methodology equally applicable to the issue of deciding whether a conviction was for a "crime of violence" for purposes of calculating "base offense levels" under the Guidelines. And we joined eight other circuits in extending *Taylor*'s "narrow" exception to guilty pleas. *Id*. at 1063–64 & n.9. For such pleas, we allowed a finding of a "crime of violence," even where the statutory elements were not adequately confining, on the basis of various "indices" including "the judgment of conviction, plea agreement or other statement by the defendant on the record, presentencing report adopted by the court, and the findings of the sentencing judge." *Id*. at 1065. Thus the "narrow range" for factual inquiry, though definitely constrained, has grown well beyond what *Taylor* specified. Here it is not altogether clear whether Gabriel's 1986 convictions arose out of a jury trial or a guilty plea.

As second degree burglary under District law is not confined to burglary of dwellings, the convictions could satisfy the requirements of § 4B1.2 only if the jury had been required to find, or if documents in connection with a plea showed, that the burglaries (or one of them) were of a "dwelling." (Gabriel doesn't contest the government's supposition that second degree burglary in the District meets the criteria of " 'generic' burglary.") The government failed to offer the sort of documents required by *Taylor* and *Hill* for going beyond the statutory elements. As the burden is on

the government to produce these documents, see *Hill*, 131 F.3d at 1065 n.10, use of the convictions to establish the "base offense level" was error.

But Gabriel raised no objection, so we review under the standard of plain error. Although the prejudice requirement for plain error in sentencing is somewhat "less exacting than it is in the context of trial errors," *United States v. Saro*, 24 F.3d 283, 287 (D.C. Cir. 1994), it still requires that the defendant demonstrate "a reasonable likelihood that the sentencing court's obvious errors affected his sentence," *id.* at 288. As Gabriel has offered nothing on that score other than highly speculative inferences from the wording of the Presentence Report, see Reply Br. at 18–20, he has failed to show the requisite likelihood. *United States v. Williams*, 358 F.3d 956, 966–67 (D.C. Cir. 2004).

Gabriel seeks to deflect the *Williams* holding by noting that there we alluded to statements in the government's brief and at oral argument indicating that if the documents had been offered, Williams's sentence would in fact not have been lower. *Id.* at 967. But the government's assurances were by no means necessary to the outcome; indeed, to have treated them as pivotal would in effect have relieved the defendant of the burden of showing the requisite "reasonable likelihood" of prejudice. (There might be cases where the defendant and his counsel for some reason couldn't obtain access to the relevant records of the prior conviction, but there is no suggestion that that is true here.) That is not the way plain error works, even as leavened by *Saro* in the sentencing context.

Accordingly, we remand for resentencing because of the errors that the parties agree require a remand; in all other respects the decision of the district court is affirmed.

*So ordered.*